1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   JENNY ANN BURKS, on behalf of          No.  2:24-CV-2477-DMC
     BAMAB, a minor,
12
                 Plaintiff,
13                                          MEMORANDUM OPINION AND ORDER
          v.
14
     COMMISSIONER OF SOCIAL
15   SECURITY,

16               Defendant.

17

18

19          Plaintiff, who is proceeding with retained counsel, brings this action for judicial

20   review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

21   Pursuant to the written consent of all parties, ECF Nos. 4 and 5, this case is before the

22   undersigned as the presiding judge for all purposes, including entry of final judgment.  See 28

23   U.S.C. § 636(c).  Pending before the Court are the parties' briefs on the merits, ECF Nos. 8 and

24   11.

25          The Court reviews the Commissioner's final decision to determine whether it is:

26   (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

27   whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is

28   more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521

                                           1

1    (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support

2    a conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole,

3    including both the evidence that supports and detracts from the Commissioner's conclusion, must

4    be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones

5    v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The Court may not affirm the Commissioner's

6    decision simply by isolating a specific quantum of supporting evidence.  See Hammock v.

7    Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative

8    findings, or if there is conflicting evidence supporting a particular finding, the finding of the

9    Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

10   Therefore, where the evidence is susceptible to more than one rational interpretation, one of

11   which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

12   Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

13   standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th

14   Cir. 1988).

15            For the reasons discussed below, the Commissioner's final decision is affirmed.

16

17                        **I.  THE DISABILITY EVALUATION PROCESS**

18            This case involves a child's application for social security benefits.  Child's

19   Supplemental Security Income is paid to disabled persons under the age of eighteen.  A child is

20   considered disabled if the child has a medically determinable physical or mental impairment that

21   results in marked and severe functional limitations.  See 42 U.S.C. § 1382c(a)(3)(C)(I).  The

22   Commissioner employs a three-step sequential evaluation process to determine whether a child is

23   disabled.  See 20 C.F.R. § 416.924(a)-(d).  The sequential evaluation proceeds as follows:

24            Step 1    Determination whether the claimant is engaged in
25                      substantial gainful activity; if so, the claimant is presumed
                        not disabled and the claim is denied;

26            Step 2    If the claimant is not engaged in substantial gainful activity,
27                      determination whether the claimant has a severe
                        impairment; if not, the claimant is presumed not disabled
                        and the claim is denied;

28

2

|   | Step 3 | If the claimant has one or more severe impairments, determination whether any such severe impairment meets, medically equals, or functionally equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the clam is granted. |

See id.

Evaluation of a childhood disability claim does not involve determination of the claimant's residual functional capacity or consideration of vocational issues.

## II.  THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on February 7, 2019, on behalf of the claimant, a minor.  See CAR 17.[1]  In the application, Plaintiff claims on behalf of the minor claimant that disability began on January 1, 2018.  See id.  The claim was initially denied. Following denial of reconsideration, an administrative hearing was requested, which was held on August 21, 2023, before Administrative Law Judge (ALJ) Trevor Skarda.  In an October 4, 2023, decision, the ALJ concluded Plaintiff is not disabled based on the following relevant findings:

1.   The claimant was born on August 28, 2007, and was a school-age child on the date the application for benefits was filed.

2.   The claimant has not engaged in substantial gainful activity since the date the application was filed.

3.   The claimant has the following severe impairment(s): learning disability and attention deficit hyperactivity disorder (ADHD).

4.   The claimant does not have an impairment or combination of impairments that meets, medically equals, or functionally equals an impairment listed in the regulations.

See id. at 18-28.

After the Appeals Council declined review on July 22, 2024, this appeal followed.

/ / /

/ / /

---

[1]    Citations are to the Certified Administrative Record (CAR) lodged on November 8, 2024, ECF No. 7.

1

### III. DISCUSSION

2      In her opening brief, Plaintiff argues on behalf of the claimant that the ALJ did not

3  reasonably conclude at Step 3 that the claimant has less than marked limitations in the functional

4  domains of acquiring and using information and attending and completing tasks.  <u>See</u> ECF No. 8-

5  2.

6      At Step 3, the ALJ first noted the following applicable framework for analysis of a

7  child disability claim:

8      If the claimant has a severe impairment or combination of impairments
       that does not meet or medically equal any listing, the undersigned must
9      determine whether the claimant has an impairment or combination of
       impairments that functionally equals the listings. When determining
10     functional equivalence, the undersigned evaluates the "whole child" (see
       Social Security Ruling 09-1p), by considering how the claimant functions
11     at home, at school, and in the community; the interactive and cumulative
       effects of all of the claimant's medically determinable impairments on the
12     claimant's activities; and the type, extent, and frequency of help the
       claimant needs.

13

       The undersigned must consider how the claimant functions in six domains:
14     (1) acquiring and using information; (2) attending and completing tasks;
       (3) interacting and relating with others; (4) moving about and
15     manipulating objects; (5) caring for yourself; and (6) health and physical
       well-being. To functionally equal the listings, the claimant's impairment
16     or combination of impairments must result in "marked" limitations in two
       domains of functioning or an "extreme" limitation in one domain. Our
17     rules explain that a claimant has a "marked" limitation in a domain when
       his impairment(s) "interferes seriously" with the ability to independently
18     initiate, sustain, or complete activities, and a claimant has an "extreme"
       limitation" in a domain when his impairment(s) "interferes very seriously"
19     with these same abilities. In making this assessment, the undersigned must
       compare how appropriately, effectively and independently the claimant
20     performs activities compared to the performance of other children of the
       same age who do not have impairments (20 CFR 416.926a).

21

       Based on the requirements of 20 CFR 416.924a(a) and SSR 09-2p, the
22     undersigned has considered all of the relevant evidence in the case record.
       "All of the relevant evidence" includes objective medical evidence and
23     other relevant evidence from medical sources; information from other
       sources, such as school teachers, family members, or friends; the
24     claimant's statements (including statements from the claimant's parent(s)
       or other caregivers); and any other relevant evidence in the case record,
25     including how the claimant functions over time and in all settings (i.e., at
       home, at school, and in the community).

26

       CAR 20-21.

27

28  / / /

4

1   As to the domains of acquiring and using information and attending and completing tasks, the

2   ALJ determined that the claimant has "less than a marked" limitation in each area.  See id. at 21.

3               Before discussing findings as to each specific domain, the ALJ set forth the

4   following summary of the record:

5           The claimant's mother alleges difficulties with progress in learning and in
            paying attention and staying on tasks (Exhibit 2E/5, 9). Further, the
6           claimant alleges difficulties with cognition; social behavior; and executive
            functioning (Testimony). The claimant explained that the claimant needed
7           redirecting one or two times per hour to complete tasks and chores and has
            difficulties understanding his emotions (Testimony). The claimant noted
8           that currently the claimant is in special education classes except for his
            elective (Testimony). The claimant testified that he sometimes needs
9           redirecting by teachers because he is distracted with talking to others
            (Testimony).
10
            The undersigned has reviewed and considered the medical history
11          consistent with 20 CFR 416.912 as discussed below.

12          An IEP, in January 2019, showed that the claimant was in 93 percent of
            the time in the regular classroom, extracurricular, and non-academic
13          activities, and was seven percent of the time outside the regular classroom,
            extracurricular, and non-academic activities (Exhibit 1E/16). The
14          claimant's accommodations included: extended time, frequent checks for
            understanding, preferred seating, on task reminders, and frequent verbal
15          reinforcement (Exhibit 1E/15).

16          The following month, progress notes showed improving symptoms from
            ADHD (Exhibit 1F/2). The claimant denied aggravating factors such as
17          distractions (Exhibit 1F/2).

18          In March 2019, educational records from the claimant's school counselor
            showed executive function deficits but no[] other limitations, including no
19          behavior disorder (Exhibit 5E/2).

20          Also in March 2019, Ms. Forsberg-Bogaard, the claimant's six grade
            teacher, submitted a teacher Questionnaire form (Exhibit 6E). Ms.
21          Forsberg-Bogaard reported that the claimant was functioning about two
            grade levels behind in math; would often start but not complete math
22          tasks; could read and decode but struggled to attend throughout the
            reading; required frequent reminders to stay on tasks; had no problems
23          interacting and relating to others; had no problems moving about and
            manipulating objects; experienced frustration early and often causing him
24          to avoid tasks and trying to go unnoticed; often escaped by drawing,
            doodling, and conversing with classmates to the point of disruption; often
25          appeared fatigued and overly tired (Exhibit 6E/7).

26          A psychological consultative examination, in May 2019, showed that the
            claimant had alert and cooperative attitude and behavior; had normal
27          speech; had normal understanding of instructions except for some
            occasional difficulties with complex tasks; had normal memory; was not
28          overly active; did not fidget or squirm in his chair; was not easily

                                            5

distracted by items on the desk; and had normal reality contact (Exhibit 2F/4-5). Testing showed Full Scale I.Q. of 82, which was in the low average range with higher levels of difficulty on fluid reasoning tasks (Exhibit 2F/6). Dr. David C. Richwerger diagnosed ADHD that appeared to be under adequate control on medication (Exhibit 2F/7). Further, Dr. Richwerger assessed that the claimant had no mental limitations (Exhibit 2F/7).

In April 2021, school psychologist Monica Smith, Ph.D. determined that the claimant continued to be eligible for special education and related services demonstrated by consistency between prior psychological processing test results and current academic underachievement relative to grade level (Exhibit 4F/3-4).

In May 2021, an IEP continued to show that the claimant was primarily in a regular classroom and only spend[s] 240 minutes per week in specialized academic instruction (Exhibit 9E/10, 12). However, the claimant continued to have the following accommodations: extended time, frequent checks for understanding, preferred seating, on task reminders, and frequent verbal reinforcement (Exhibit 9E/10).

The following month, a mental status examination showed average eye contact; cooperative attitude; anxious mood; constricted affect; clear speech; logical thought process; normal perception; normal thought content; impaired concentration; minimal insight; and normal judgment (Exhibit 7F/55).

In November 2022, progress notes showed unremarkable findings, including normal insight and judgment; cooperative behavior; and normal thought content (Exhibit 11F/38).

In February 2023, a mental status examination reflected average eye contact; cooperative attitude; anxious mood; constricted affect; clear speech; logical thought process; normal perception; normal thought content; impaired concentration; and minimal insight (Exhibit 11F/9).

CAR 21-23.

In addition to the claimant's testimony and objective evidence, summarized above, the ALJ considered medical opinions from the following sources: (1) state agency medical consultants who reviewed documents but did not conduct any evaluation of the claimant; (2) Dr. Savage; (3) Dr. Richwerger; (4) the claimant's special education teacher; and (5) the claimant's classroom teacher.  See id. at 23-24.

/ / /

/ / /

/ / /

As to the domains at issue in this case – acquiring and using information; attending and completing tasks – the ALJ stated as follows:

### a. Acquiring and Using Information

This domain considers how well a child is able to acquire or learn information, and how well a child uses the information he has learned (20 CFR 416.926a(g)).

The regulations provide that an adolescent (i.e., a child age 12 to attainment of age 18) without an impairment should continue to demonstrate in middle and high school what he has learned in academic assignments (e.g., composition, classroom discussion, and laboratory experiments). The child should also be able to use what he has learned in daily living situations without assistance (e.g., going to the store, using the library, and using public transportation). The child should be able to comprehend and express both simple and complex ideas, using increasingly complex language (vocabulary and grammar) in learning and daily living situations (e.g., to obtain and convey information and ideas). The child should also learn to apply these skills in practical ways that will help him enter the workplace after finishing school (e.g., carrying out instructions, preparing a job application, or being interviewed by a potential employer) (20 CFR 416.926a(g)(2)(v)).

Social Security regulation 20 CFR 416.926a(g)(3) sets forth some examples of limited functioning in this domain that children of different ages might have. The examples do not apply to a child of a particular age; rather, they cover a range of ages and developmental periods. In addition, the examples do not necessarily describe "marked" or "extreme" limitation in the domain. Some examples of difficulty children could have in acquiring and using information are: (i) does not understand words about space, size, or time (e.g., in/under, big/little, morning/night); (ii) cannot rhyme words or the sounds in words; (iii) has difficulty recalling important things learned in school yesterday; (iv) has difficulty solving mathematics questions or computing arithmetic answers; or (v) talks only in short, simple sentences, and has difficulty explaining what he means.

The claimant has less than marked limitation in acquiring and using information. The claimant's mother alleges difficulties with learning and cognition (Exhibit 2E/5; Testimony). Dr. Savage opined that the claimant had marked limitations in this domain (Exhibit 12F/14). However, Dr. Savage's assessment is not consistent with the record. For example, the record shows that the claimant is able to attend regular education classes 97 percent of the time as explained above (Exhibit 1E/15). Further, findings at the psychological consultative examination showed normal memory and normal understanding except for some occasional difficulties with complex tasks as discussed above (Exhibit 2F/4). In addition, the state agency medical consultants assessed that the claimant had less than marked limitations in this domain (Exhibits 1A/6; 3A/7). The undersigned finds that the claimant has a less than marked limitation in his ability to acquire and use information.

/ / /

7

### b.  Attending and Completing Tasks

This domain considers how well a child is able to focus and maintain attention, and how well he is able to begin, carry through, and finish activities, including the pace at which he performs activities and the ease of changing activities (20 CFR 416.926a(h)).

The regulations provide that an adolescent without an impairment should be able to pay attention to increasingly longer presentations and discussions, maintain his concentration while reading textbooks, and independently plan and complete long-range academic projects. The child should also be able to organize his materials and to plan his time in order to complete school tasks and assignments. In anticipation of entering the workplace, the child should be able to maintain attention on a task for extended periods of time, and not be unduly distracted by peers or unduly distracting to them in a school or work setting (20 CFR 16.926a(h)(2)(v)).

Social Security regulation 20 CFR 416.926a(h)(3) sets forth some examples of limited functioning in this domain that children of different ages might have. The examples do not apply to a child of a particular age; rather, they cover a range of ages and developmental periods. In addition, the examples do not necessarily describe "marked" or "extreme" limitation in the domain. Some examples of difficulty children could have in attending and completing tasks are: (i) is easily startled, distracted, or over-reactive to sounds, sights, movements, or touch; (ii) is slow to focus on, or fails to complete, activities of interest (e.g., games or art projects); (iii) repeatedly becomes side-tracked from activities or frequently interrupts others; (iv) is easily frustrated and gives up on tasks, including ones he is capable of completing; or (v) requires extra supervision to remain engaged in an activity.

The claimant has a less than marked limitation in attending and completing tasks. The claimant's mother reported that the claimant needs redirecting one or two times per hour to complete tasks (Testimony). Further, the claimant's teacher also reported that the claimant require redirection to complete math assignments (Exhibit 6E). Dr. Savage opined that the claimant had marked limitations in this domain (Exhibit 12F/14). However, during the psychological consultative examination, the claimant was not easily distracted and was not overly active (Exhibit 2F/4). Further, the mental status examinations in the record show some difficulties with concentration but normal thought process and content, and normal perception as explained above (Exhibits 7F/55; 11F/9, 38). The state agency medical consultants assessed that the claimant had less than marked limitations in this domain (Exhibits 1A/6; 3A/7). The undersigned finds that the claimant has a less than marked limitation in his ability to attend and complete tasks.

CAR 24-26 (underlining in original).

///

///

///

Plaintiff argues that the ALJ erred in evaluating the opinion offered by Dr. Savage, Plaintiff's treating psychologist, in reaching findings regarding the two domains at issue.  See ECF No. 8-2, pgs. 8-11.  As to the domain of attending and completing tasks, Plaintiff also argues that the ALJ failed to consider "highly relevant facts" offered by the claimant's special education teacher.  Id. at 10-11.

## A.    Evaluation of Medical Opinion Evidence

"The ALJ must consider all medical opinion evidence."  Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)).  The ALJ errs by not explicitly rejecting a medical opinion.  See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014).  The ALJ also errs by failing to set forth sufficient reasons for crediting one medical opinion over another.  See id.

Under the regulations, only "licensed physicians and certain qualified specialists" are considered acceptable medical sources.  20 C.F.R. § 404.1513(a); see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).  Where the acceptable medical source opinion is based on an examination, the ". . . physician's opinion alone constitutes substantial evidence, because it rests on his own independent examination of the claimant."  Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  The opinions of non-examining professionals may also constitute substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.  See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).  Social workers are not considered an acceptable medical source.  See Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1223-24 (9th Cir. 2010).  Nurse practitioners and physician assistants also are not acceptable medical sources.  See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016).  Opinions from "other sources" such as nurse practitioners, physician assistants, and social workers may be discounted provided the ALJ provides reasons germane to each source for doing so.  See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance when opinions from "other sources" may be considered acceptable medical opinions).

/ / /

9

The Commissioner has promulgated revised regulations concerning how ALJs must evaluate medical opinions for claims filed, as here, on or after March 27, 2017.  See 20 C.F.R. §§ 404.1520c, 416.920c.  These regulations supersede prior caselaw establishing the treating physician rule which established a hierarchy of weight to be given medical opinions depending on their source.  See id.; see also Jones v. Saul, 2021 WL 620475, at *9 (E.D. Cal. Feb. 17, 2021) ("In sum, because (1) the 2017 regulations are not arbitrary and capricious or manifestly contrary to statute, (2) the prior judicial construction was not mandated by the governing statutory language to the exclusion of a differing agency interpretation, and (3) the [treating-physician rule] is inconsistent with the new regulation, the court concludes that the 2017 regulations effectively displace or override [prior caselaw].").  Thus, ALJs are no longer required to "defer to or give any specific evidentiary weight to" treating physicians over medical opinions from other sources.  See Carr v. Comm'r of Soc. Sec., 2021 WL 1721692, at *7 (E.D. Cal. Apr. 30, 2021).

Under the revised regulations, the ALJ must evaluate opinions and prior administrative medical findings by considering their "persuasiveness."  See Buethe v. Comm'r of Soc. Sec., 2021 WL 1966202, at *3 (E.D. Cal, May 17, 2021) (citing 20 C.F.R. § 404.1520c(a)). In determining how persuasive the opinion of a medical source is, an ALJ must consider the following factors:  supportability, consistency, treatment relationship, specialization, and "other factors."  See Buethe, 2021 WL 1966202, at *3 (citing § 404.1520c(b), (c)(1)-(5)).  Despite a requirement to consider all factors, the ALJ's duty to articulate a rationale for each factor varies. See Buethe, 2021 WL 1966202, at *3 (citing § 404.1520c(a)-(b)).

Specifically, in all cases the ALJ must at least "explain how [she] considered the supportability and consistency factors," as they are "the most important factors." See Buethe, 2021 WL 1966202, at *4 (citing § 404.1520c(b)(2)).  For supportability, the regulations state: "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive [the opinion] will be."  See Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(c)(1)).  "For consistency, the regulations state: '[t]he more consistent a

medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive [the opinion] will be.'" Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(c)(2)). "The ALJ is required to articulate findings on the remaining factors (relationship with claimant, specialization, and 'other') only when 'two or more medical opinions or prior administrative medical findings about the same issue' are 'not exactly the same,' and both are 'equally well-supported [and] consistent with the record.'" Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(b)(2) & (3)).

The ALJ offered the following specific assessment of opinions offer by Dr. Savage and the state agency medical consultants:

> In determining the degree of limitation in the claimant's functioning, the undersigned has also considered the medical opinions in accordance with the applicable regulations. Turning to evaluation of this evidence, the undersigned finds the prior administrative medical findings persuasive. The state agency medical consultants opined that the claimant had no more than less than marked limitations (Exhibits 1A/6-7; 3A/7-8). The state agency medical consultants reviewed the medical evidence at the time of their opinion and supported their opinion with such review. Further, given the record, including findings at the psychological consultative examination showing normal memory, some problems with concentration, and cooperative behavior as explained above; the mental status examinations reflecting cooperative behavior, impaired insight, normal judgment, impaired concentration, and normal thought process and content as discussed above; and school records showing that the claimant is able to attend school primarily in a regular classroom as detailed above, the undersigned finds that these opinions are supported by and consistent with the record as a whole.
>
> In contrast, the undersigned finds the opinion by the claimant's psychologist, Dr. Savage, unpersuasive. Dr. Savage opined that the claimant had marked and extreme limitations, including extreme limitations in the claimant's ability to interact and relate with others (Exhibit 12F/13-17). Given the record, including findings of cooperative behavior, educational records showing no behavioral difficulties, and the claimant's mother statements that the claimant is able to play team sports and is able to get along with family and friends as discussed above, and findings of at times difficulties with concentration but with normal thought content and normal memory as explained above and of normal understanding of instructions except for some occasional difficulties with complex tasks as discussed above, the undersigned finds that this opinion overstates the claimant's functional limitations.
>
> CAR 23.

///

///

11

1          Plaintiff argues that the ALJ's assessment of Dr. Savage's opinion is inconsistent

2  with the record and failed to take into account identical limitations assessed by the claimant's

3  special education teacher.  See ECF No. 8-2, pg. 8 (citing CAR 640-41 and 649).  Plaintiff adds

4  that the ALJ was "wrong to conclude that his [the claimant's] inclusion in a general education

5  environment did not support the psychologist's limitations."  Id. at 9.  According to Plaintiff: "*In*

6  *fact, the record cited by the ALJ, Exhibit 1E/15, describes several accommodations he received <u>in</u>*

7  *<u>a regular classroom setting</u>,* including frequent checks for understanding, frequent verbal

8  reinforcement, on-task reminders, extended time, and small group settings for testing, among

9  others."  Id. (emphasis in original).  Regarding Dr. Savage's opinion, the ALJ relied on the

10  following: evidence of the claimant's cooperative behavior, educational records showing no

11  behavioral difficulties, the claimant's mother statements that the claimant is able to play team

12  sports and is able to get along with family and friends as discussed above, and

13  findings that the claimant had occasional difficulties with concentration but normal thought

14  content, normal memory, and mostly normal understanding of instructions.  See id.

15          Contrary to Plaintiff's assertion, the ALJ did not conclude that Dr. Savage's

16  opinions were inconsistent with the claimant's attendance in a regular classroom setting.  In

17  particular, the ALJ noted several times that the claimant received various accommodations in the

18  general classroom setting.  Thus, while the ALJ considered the claimant's ability to participate in

19  the general classroom setting with accommodation, the ALJ did not rely solely on attendance in

20  the general classroom setting to discount Dr. Savage's opinions of greater limitation that those

21  assessed by the agency doctors.

22          In this regard, the Court finds that the ALJ's discussion of Dr. Savage's opinions,

23  in contrast with those offered by the agency doctors, satisfied the Commissioner's obligation

24  under the revised regulations.  The following substantial evidence of record supports the analysis:

25  (1) the claimant testified at the administrative hearing that he only sometimes needs redirecting

26  by teachers due to distractions; (2) In January 2019, an IEP reflected that Plaintiff could

27  participate in the general classroom setting for 93% of the time with only limited

28  accommodations such as additional time to complete tasks, checks for understanding, and verbal

12

reinforcements; (3) in February 2019, progress notes showed that the claimant's symptoms related to ADHD were improving, and the claimant denied aggravating factors such as distractions; (4) in March 2019, educational records shows that the claimant still had deficits in executive functioning but no other limitations, including behavior disorders; (5) also in March 2019, the claimant's teacher stated that, while the claimant was behind two grade levels in math, the claimant had no problems interacting and relating to others or moving about and manipulating objects; (6) a psychological evaluation of the claimant in May 2019 showed that the claimant was alert and cooperative, had normal speech, had normal understanding except for some occasional difficulty with complex tasks, had normal memory and was not overly active, did not fidget, and was not easily distracted; (7) in May 2021, a psychological examination showed a cooperative mood, logical thought process, normal perception, normal thought content, and normal judgment; (8) in November 2022, progress notes showed unremarkable findings; and (9) in February 2023, a mental status examination showed average eye contact, cooperative attitude, clear speech, logical thought process, and normal perception.

As the ALJ explained, a "marked" limitation is one which interferes "very seriously."  20 C.F.R. § 416.92(a).  Given the foregoing evidence of record, the Court finds that substantial evidence supports the limited weight given to Dr. Savage's opinions that the claimant has marked limitations.  Specifically, Dr. Savage's opinions are largely not consistent with the objective evidence, cited above, showing that the claimant has limitations which do not "very seriously" impair the claimant's functioning.  The claimant had some accommodations in the general classroom setting which allowed him to function with the rest of the classroom 94% of the time.  The ALJ's conclusion is also supported by the opinions of the state agency doctors who opined that the claimant has less than marked limitations.  Here, because the state agency doctors' opinions are largely consistent with the objective evidence and Dr. Savage's opinions are not, the ALJ was not required to articulate findings and to the factors other than consistency.  See Buethe, 2021 WL 1966202, at *4.  And, as Defendant correctly observes, where there are conflicting medical opinions and where evidence is susceptible to multiple interpretations, it is for the ALJ to resolve the conflict.  See Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002); Treichler v.

1    Commissioner, 775 F.3d 1090, 1098 (9th Cir. 2014).  The ALJ did not err in resolving any

2    conflicts in the medical opinions in favor of accepting the agency doctors' opinions over those

3    offered by Dr. Savage.

4          **B.**      **Evaluation of Evidence from the Claimant's Special Education Teacher**

5          In evaluating a disability claim, the agency considers all evidence in the record to

6    make the required determinations. See 20 C.F.R. § 416.924a(a), see also Social Security Ruling

7    09-02p.  The regulations require the ALJ to consider whether a claimant has participated in

8    special education.  See Social Security Ruling 09-03p.  In this case, the claimant participated in

9    special education, and the special education teacher's statements were considered by the ALJ as

10   follows:

11         The undersigned finds the statements by the claimant's special education

12         teacher unpersuasive. The claimant's special education teacher opined that
           the claimant had several marked limitations, including marked limitations

13         in his ability to interact with others and in health and physical wellbeing
           (Exhibit 12F/1-5). Given the record, including mental status examinations

14         reflecting cooperative behavior, educational records showing no
           behavioral difficulties, and the claimant's mother statements that the

15         claimant is able to play team sports and is able to get along with family
           and friends as explained above, the undersigned finds that this opinion

16         overstates the claimant's limitations.

           CAR 24.
17

18         According to Plaintiff, the ALJ erred in determining that the claimant has less than

19   marked limitation in the domain of attending and completing tasks.  More specifically, Plaintiff

20   argues:

21         . . .[The] special education teacher identified an *obvious problem*
           reading and comprehending written material and a *serious problem*

22         comprehending and doing math problems. Tr. 310. He was functioning
           about two grade levels behind in math; would often start but not complete

23         math tasks; struggled to attend throughout the reading; and required
           frequent reminders to stay on task. Tr. 310-11. He had a *very serious*

24         *problem* focusing long enough to finish his assignments and tasks; this
           was an **hourly** problem. Tr. 311. He had a *serious problem* refocusing,

25         organizing, and working at a reasonable pace. *Id*. These were also
           considered **hourly** problems. *Id*. He needed frequent reminders to stay on

26         task and had a special education teacher "2-3 days/week as well as
           modifications to the curriculum during the general education portion." *Id*.

27         She opined that "chronic fatigue and difficulty concentrating or sustaining
           focus on academic tasks is detrimental to [claimant's] progress and

28         learning." Tr. 315. School psychologist Monica Smith, Ph.D., assessed

that his cognitive "deficits are significant and adversely affect his academic progress to date." Tr. 418. For that reason, she found that he was still eligible for special education services. Tr. 419.

ECF No. 8-2, pg. 10 (emphasis in original).

While it is undisputed that the claimant has limitations in the domain of attending and completing tasks, the Court does not agree with Plaintiff that the ALJ failed to consider limitations noted by the special education teacher. To the contrary, the ALJ specifically commented that the special education teacher had opined as to marked limitations and, in doing so, cited to the special education teacher's report at Exhibit 12F. Again, this case turns on the ALJ's evaluation of conflicting evidence – on the one hand, evidence from the state agency doctors who both opined that the claimant has no marked limitations, and on the other hand, evidence from both Dr. Savage as well as the special education teacher that the claimant has marked limitations. As explained above, the Court must defer to the ALJ's resolution of such conflicts in the evidence where, as here, both interpretations are supported by substantial evidence. The ALJ reasonably concluded that the special education teacher's report did not support an overall finding that the claimant has limitations which "very seriously" affect his ability to attend and complete tasks.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1    **IV.  CONCLUSION**

2              Based on the foregoing, the Court concludes that the Commissioner's final

3    decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY

4    ORDERED that:

5              1.    Plaintiff's motion for summary judgment, ECF No. 8, is denied;

6              2.    Defendant's motion for summary judgment, ECF No. 11, is granted;

7              3.    The Commissioner's final decision is affirmed; and

8              4.    The Clerk of the Court is directed to enter judgment and close this file.

9

10   Dated:  August 5, 2025

11                                                    _____

12                                                    DENNIS M. COTA
                                                      UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28